(48 South. 922.)

No. 17,290.

PROVIDENT BANK & TRUST CO. v. SAXON et al.

LOUISIANA NAT. BANK v. HENDERSON et al.

(March 15, 1909.)

CONSTITUTIONAL LAW (§ 154*)—OBLIGATION OF CONTRACTS—CORPORATIONS.

Act No. 120, p. 281, of 1904, entitled "An act recognizing the validity of corporations heretofore attempted to be formed under the laws of this state and providing that the validity of their acts and contracts shall be the same as if said corporations had been always valid," is *held*, for reasons assigned, to be not unconstitutional as impairing the obligations of contracts.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 467, 469; Dec. Dig. § 154.*]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred Durieve King, Judge.

Actions by the Provident Bank & Trust Company against W. L. Saxon and others, and by the Louisiana National Bank against Thomas J. Henderson and others. The actions were consolidated. Judgment for defendants, and plaintiffs appeal. Affirmed.

Miller, Dufour & Dufour, Henry Mooney, and Frank McGloin, for appellants. Lyle Saxon, for appellees Walter L. Saxon, Edward Aarons, Col. Peter F. Pescud, Claude Smith, and Capt. James B. Sinnott. Samuel Louis Gilmore, for appellee Col. Peter F. Pescud. Richardson & Soulé and J. Sexton, for appellees Dr. Luther Sexton and E. S. Maunsell. McCloskey & Benedict, for appellee T. J. Henderson. Rice & Montgomery, for appellee Robert W. Wilmot. Charles Louque, for appellee H. A. Testard. James Edwin Zunts, for appellee C. N. Dudley.

NICHOLLS, J. These two cases were consolidated in the lower court. They were before the court separately in 1906, each appealing from a judgment of the district court sustaining an exception "of no cause of action" and dismissing their suits. The judgments were reversed, and the cases were remanded to the lower court for further proceedings according to law. See Louisiana National Bank v. Henderson et al. (No. 15,873) 116 La. 414, 40 South. 779, and Provident Bank & Trust Company v. Saxon et al. (No. 15,874) 116 La. 408, 40 South. 778. and where the pleadings in each will be found. As the court stated in its opinion in the former case that the allegations therein were more far-reaching than those in the one last mentioned, we will transcribe at length the allegations of the petition in No. 15,873, noting later the differences between them and the petition in 15,874, if deemed necessary. The plaintiff in No. 15,873 alleged that:

"The parties hereinafter named are each one in solido indebted to petitioner in the sum of six thousand eight hundred and twenty-six and $21/100$ dollars, besides interest and costs of suit, for this, to wit: That the parties hereinafter named have in law and in fact been engaged in the buying and selling of mineral waters, personal property, and for and in the prosecution of said business have been associated in the commercial partnership, and as to the same are and have been commercial partners; that the said business or commercial partnership has been carried on by the parties hereinafter named, under the name and style of the 'Vossburg Mineral Springs Company, Limited,' under the pretense that the same was a corporation, whereas, in law and in fact, the said Vossburg Mineral Springs Company, Limited, and the said parties hereinafter named, were not and did not form a corporation; that the said contract between the parties was one of partnership, commercial in its character, and in which each one of the said parties was and is liable as a commercial partner; that in the attempted organization of the said so-called corporation the law was violated or not complied with in many particulars, especially in the following, to wit:

"That while the pretended charter of said so-called corporation evidenced by authentic act passed before Fergus Kernan, notary public, in this city on August 27, 1902, was recorded in the mortgage office for the parish of Orleans, in book 723, folio 629, there was not recorded then or at any other time in said mortgage office the original subscriptions made for the purpose of organizing said pretended corporation, in which respect there was a total failure to comply with the law prescribed for the validity of such a corporation or the valid creation of such a corporation, in consequence of which no corporation was created, and all members engaged in the prosecution of said business, under the color of said pretended incorporation, became and remained liable as commercial partners, and are liable as such in solido, for and upon all contracts and for any doings of the said pretended corporation; that although the said authentic act of incorporation aforesaid was recorded in the office of the recorder of mortgages for the parish of Orleans, besides the fact that the original subscriptions for the purpose of organizing the same was not therein recorded, it is, and was also, a fact, that there was an entire failure or omission to publish the said pretended charter in a newspaper at the domicile of said pretended corporation, in accordance with law; that said publication was made in a religious paper published weekly, known as the 'Southwestern Presbyterian,' which is a religious paper of special and limited circulation, and such was not in compliance with the requirements of law touching such publication.

"That, under the statutes in such cases made and provided in the law, the publication of a charter of any corporation to be valid and effective must have been in a secular paper published daily and of general circulation. That the following named parties all residing in this city were those who, as commercial partners, engaged in the business aforesaid, under the name and style of the 'Vossburg Mineral Springs Company, Limited,' a pretended corporation, the creation and organization of which was not in accordance with law, as aforesaid, and who, by noncompliance with the requisites of law as aforesaid, made themselves liable and responsible, in solido, for all of the contracts and doings of the pretended corporation in the same manner and to the same extent as commercial partners, engaged in such commercial business, to wit: Thomas J. Henderson, James B. Sinnott, Edward Aarons, Peter F. Pescud, John H. Kamlade, Robert W. Wilmot, Henry A. Testard, Walter J. Saxon, Charles L. Dudley, Claude M. Smith, Edward J. Maunsell, and Luther Sexton.

"That all of said parties falsely claiming to be a corporation, as petitioner then and there erroneously believed, and acting under and by virtue of the said attempted incorporation of the said Vossburg Mineral Springs Company, Limited, the incorporation of which was invalid for the reasons hereinbefore set out, and assuming without authority to act as such corporation, then and there maintained in its name, with petitioner, and as incidental to said commercial business, a deposit account; that under said assumed corporate name the said parties discounted with petitioner its drafts against the several persons named, and for the amounts set out in the statement filed herewith as part hereof; that the proceeds or the avails of said discount of the said drafts, drawn ostensibly by said pretended corporation, but in reality drawn by said parties, were to and with their full knowledge and consent, passed to the credit of the said so-called corporation, said Vossburg Mineral Springs Company, Limited, to and upon the said deposit account kept by said parties in the name of said pretended corporation, and by petitioner paid out in due course on the checks of the said pretended corporation under the name of which said defendants operated and did business; that all of the aforesaid acts and doings of the said Vossburg Mineral Springs Company, Limited, were, in reality, the acts and doings of the said parties defendant aforesaid, acting together as commercial partners in the business aforesaid, but pretending to act as such corporation; that the discounts of said drafts aforesaid, and the proceeds or avails thereof, were received, realized, and reduced to possession by said parties defendant, unlawfully under the acts of the pretended corporation aforesaid, in violation of law, of which facts they had then and there full knowledge, but of which petitioners were then and there ignorant.

"That all of this was done by and through Henry Mordecai, the agent and representative of said so-called corporation, and the aforesaid partners pretending to act as such corporation, and the said proceeds of the said drafts were duly received, used, and employed in said business by said parties, pretending to act as the corporation aforesaid, and in violation of law.

"That the aforesaid business incidental to which the said drafts were discounted by petitioner and passed to the credit as aforesaid, and used by the said parties pretending to act as such corporation, was the buying and selling of mineral springs water, personal property, and the business by reason of the character which said parties became bound and liable in solido as commercial partners in any contract, matter, or thing relating to the same. That, prior to and at the time of the creation of said indebtedness by said parties, petitioner was ignorant of the said failure to comply with the law regarding said attempted or pretended corporation, but only learned of the same long after the creation of said indebtedness. That said indebtedness so created by said parties, claiming unlawfully to act as such corporation, to petitioner, amounts to the aforesaid sum of six thousand eight hundred and twenty-six and $21/100$ dollars, after allowing the proper credits upon the same, as is shown by said account, and is now wholly due, owing, and remaining unpaid.

"In view of the premises, petitioner prays that the said Thomas J. Henderson, James B.

Sinnott, Edward Aarons, Peter F. Pescud, John H. Kamlade, Robert W. Wilmot, Henry A. Testard, Walter L. Saxon, Charles N. Dudley, Claude M. Smith, Edward S. Maunsell, and Luther Sexton, may, each one of them, be duly cited to appear and answer this petition, and that, after due proceedings had, petitioner have and recover judgment against each one of said defendants in solido in the full sum of six thousand eight hundred and twenty-six and 21/₁₀₀ dollars, with legal interest thereon from judicial demand until paid, for costs and for general relief."

After pleading various exceptions, the defendants answered, pleading a general denial, and all for the purposes of this opinion substantially answering alike. They admitted that they were stockholders in the Vossburg Mineral Company, Limited, but denied that they were organizers of the company or had anything to do with the organization of same, or signed any subsequent list of original subscribers, or at any time subscribed to the treasury stock of said company; that they acquired the stock which they held in said corporation for value in the open market, in good faith believing that said stock was issued by a regular and legal corporation; that they never at any time held themselves out as members of any partnership concerning the business and purposes of said corporation, and that neither plaintiff nor any other person when dealing with said Vossburg Mineral Springs Company, Limited, ever supposed that said company was a copartnership, or that defendants were liable as members of a firm or copartnership. They specially averred that plaintiff in this case dealt with the said Vossburg Mineral Springs Company, Limited, in the belief that it was a corporation, and that said plaintiff was acquiring rights as against said corporation. They averred that they were informed and believed that the Vossburg Mineral Springs Company, Limited, was a legally organized corporation in this parish and state, and that if any irregularity existed in the formation or organization thereof, nevertheless said corporation was, in law and in fact, a de facto corporation, and that plaintiff had no right to treat the stockholders of said corporation as partners in a commercial firm. Further, that if such irregularities existed in the formation and organization of the said Vossburg Mineral Springs Company, Limited, which was denied, same was cured by the provisions of Act No. 78, p. 191, of 1904, and by Act No. 120, p. 281, of 1904 of the General Assembly of Louisiana, which respondents pleaded as a special defense in this suit. That before the plaintiff herein dealt with the Vossburg Mineral Springs Company, Limited, a special inquiry was made into the standing and condition of said company, and the making of said loan herein sued on was especially discussed, and the said directors making said loans made special and particular inquiry into the matter, and then dealt with the Vossburg Mineral Springs Company, Limited, as a corporation; that the plaintiff herein is now estopped from attempting to hold the shareholders of said Vossburg Mineral Springs Company, Limited, as partners in a commercial firm, and that said plaintiff is estopped from attempting to enforce the contract herein in any other sense, or with any other effect, than both parties to said contract understood would be given said contract when it was entered into. That said contract was entered into with the mutual understanding of both parties thereto that the said Vossburg Mineral Springs Company, Limited, was a corporation, and that said contract would be effective only as a contract with a corporation, and would bind the property of the said Vossburg Mineral Springs Company, Limited, only as the property of a corporation would be bound, and that no other liability than that would arise out of said contract; that plaintiff herein was without right legally or equitably now to seek to give another and a wider ef-

fect to said contract, and to hold your respondents as liable thereunder.

Respondents especially showed that after plaintiff had dealt for many months with the Vossburg Mineral Springs Company, Limited, a corporation with all the forms of transactions with a corporation, and had confirmed the shareholders of said corporation in the belief that said corporation was legal and valid and was accepted and dealt with by plaintiff, that plaintiff was now estopped from changing its position and from attempting to hold the said Vossburg Mineral Springs Company, Limited, as a commercial partnership and your respondents as partners therein.

Respondents further averred and showed that all the transactions and dealings between the plaintiff herein and the Vossburg Mineral Springs Company, Limited, were through Henry Mordecai in the express capacity as president of the Vossburg Mineral Springs Company, Limited; that said dealings and transactions were all based on the assumption and belief, both by the plaintiff herein and by the said Henry Mordecai, that said Vossburg Mineral Springs Company was a legally valid and existing corporation; and that if the said plaintiff and the said Henry Mordecai were mistaken in their said assumption and belief, then the said contracts between them were null and void, and the plaintiff's remedy was by an action against the said Mordecai for money had or received or borrowed by him; and respondents especially and expressly denied that they ever intended or considered themselves to have formed or entered into a commercial partnership or firm, and they expressly denied that there ever was a commercial partnership or firm existing between them, and they especially denied that they ever authorized said Mordecai or any one else to represent or act for or bind them as a commercial firm or partnership in any partnership.

In view of the premises, respondents prayed that, after due hearing and proceedings had, plaintiff's suit be dismissed at its costs, and for all such further and general relief as may be proper in the premises.

On January 3, 1905, counsel **for plaintiff** filed the following pleadings in court:

"In view of the fact that defendants on trial of exceptions by them herein presented have pretended and maintained that the acts of the General Assembly of this state, Nos. 78 and 120, of the Session of 1904, constitute and establish a discharge to defendants and exceptors from the obligation set forth in the petition herein and charged against them, the Provident Bank & Trust Company, plaintiff herein, for defense against the said plea and contention of defendants, itself pleads that if the said statutes are to be interpreted and held as carrying with them, and having the effect so contended for, or having the meaning pretended by defendants and exceptors, the said statutes are, in such event or view, unconstitutional, null, and void, as being against the Constitution of the United States, and against, also, the Constitution of this state, in that they seek to impair the obligations of the contract or contracts described in the petition herein, and to divest the vested rights of petitioner in the premises for a private purpose and without compensation made; that the said statutes, if in their body and text intended to have the retroactive effect claimed for them by defendants, and to be held as calculated or meant by their terms and expressions to apply to and govern past and perfected contracts of any sort, or to govern or apply in any way to contracts with third persons, or to the extent that same may be suggestive of such retroactive effects of any kind with third persons, contrary to the Constitution of this state, in that the titles to said statutes contain no mention, suggestion, or intimation of the presence in the body or text of the statutes of any provisions intended to have or accomplish such retroactive effect, or to touch upon, in any way contracts, particularly past, with third persons."

Plaintiff prayed that:

"If the statutes above named be held or considered, as by their terms or expressions, applying to affecting or impairing in any way the contract or contracts, and divesting the vested rights, titles, or taking away the property of petitioner as set forth and described in the petition herein, that said statutes be decreed, in so far as they pretend to apply or affect in any way petitioner's contract or contracts, or impair the obligations thereof, or affect injuriously its property, or divest its vested rights, are unconstitutional, hence null, void, and of no effect, and of no force, and for general relief."

On June 29, 1908, the district court rendered the following judgment:

"Louisiana National Bank vs. T. J. Henderson et al. Provident Bank & Trust Co. vs. Walter L. Saxon et al. No. 74,440. Civil District Court, Division B.

"This matter having been submitted to the court for adjudication, and the court considering the law and the evidence to be in favor of defendants and against plaintiffs, for the reasons orally assigned:

"It is ordered, adjudged, and decreed that there be judgment in favor of defendants R. W. Wilmot, Walter L. Saxon, Peter F. Pescud, Edward Aaron, J. B. Sinnott, Claude M. Smith, Henry A. Testard, T. J. Henderson, Dr. Luther Sexton, E. S. Maunsell, and against plaintiffs, Louisiana National Bank and Provident Bank & Trust Company, rejecting said plaintiff's demand at its costs. Judgment rendered and read in open court, June 23rd, 1908. Judgment read and signed in open court, June 29th, 1908."

Plaintiff appealed.

We have said that the allegations of the Provident Bank are somewhat different from those of the Louisiana National Bank. The only averment, we think, we need allude to is the additional averment of the Provident in its attack upon the organization of the Vossburg Mineral Springs Company, Limited:

"That that company had never had a true capital subscribed of $5,000, as required by law," and "that the pretended charter does not fix any manner of payment, or terms of payment, of its alleged stock, as enjoined by section 685 of the Revised Statutes, and that there never was any real subscription to stock of the said corporation, or any intention of the parties forming same to so subscribe; that there never were payments for such stock either made or intended by the parties concerned."

On the 27th of August, 1902, Henry Mordecai, John E. Hollingsworth, and Robert E. L. Goldsborough appeared before Fergus Kernan, notary public in and for the parish of Orleans, and two witnesses, and declaring that, availing themselves of the provisions of the act of the Legislature of this state known as "Act No. 36, p. 27, of the session of 1888," approved June 29, 1888, as well as those of the state relative to the organization of corporations, they, by those presents, formed themselves and those whom they represented into and constituted a corporation for the objects and purposes, and under the stipulations and conditions, set forth in the act, which they adopted as their charter.

They then proceeded to declare the name and title of that corporation to be "The Vossburg Mineral Springs Company, Limited," and the domicile to be in the city of New Orleans. It was to have and enjoy succession of its corporate name for a period of 99 years. It might hold, purchase, lease, sell, convey, sublease, pledge, and mortgage property, real, personal, and mixed, sue and be sued, have a seal, with such inscription and device as might be selected by the board of directors, and to change the same at pleasure. The president, or, in his absence or inability to act from any cause, the secretary, was designated as the officer upon whom citation or other legal process should be served. The objects and purposes for which the corporation was organized and the nature of the business to be carried on by it were declared to be to purchase, hold, lease, or otherwise acquire mineral springs property and to operate the same in the state of Louisiana or in any other states or territories of the United States of America or foreign countries, and to do any and all things necessary and requisite to develop and promote the operations of such mineral springs property and for the sale of the waters thereof; to sell, convey, lease, and sublease the same, and also to rent, purchase, build, or otherwise acquire hotel property or other property, and to conduct the business of hotel keeping in all its various branches, and to sell, convey, lease, or sublease such said hotel property whenever the corporation might see fit. The capital stock of the corporation was declared to be the sum of $100,000, divided into 1,000 shares of $100 each, to be issued and paid for in cash, or in property, all rights as above named, or for services rendered to said corporation or for other valuable con-

sideration, in such manner and at such time or times as the board of directors might direct. The affairs of the corporation were to be managed by a board of seven directors. The first board of directors should be composed of Henry Mordecai and E. S. Maunsell, New Orleans, La., L. A. Mordecai, Denver, Colo., Henry A. Mordecai, W. C. Mordecai, R. E. L. Goldsborough, and John E. Hollingsworth, New York.

They could make, change, modify, and alter all by-laws, rules, and regulations for the management of the business thereof as they might think proper, purchase, lease, sell, sublease, mortgage, and pledge property, real, personal, and mixed, make and assign notes, bonds, and contracts, and, generally, do all such other matters and things as are necessary and proper for the successful management of the business of the corporation.

No stockholder should ever be held liable or responsible for the contracts or faults of the corporation, or in any further sum than the amount of his indebtedness to the corporation, nor should any mere informality in the organization of the corporation have the effect of rendering its charter null, or of exposing a stockholder to any liability beyond the amount of his or her shares.

The foregoing act of incorporation of the Vossburg Mineral Springs Company, Limited, was recorded in the recorder of mortgages' office on the 28th of August, 1902.

Under the number "120," the General Assembly of the state of Louisiana, of its session of 1904, enacted an act entitled:

"An act recognizing the validity of corporations heretofore attempted to be formed under the laws of this state, and providing that the validity of their acts and contracts shall be the same as if said corporations had been always valid."

The first section provides that whenever persons have undertaken to form a corporation under any of the existing laws of this state, and have executed, recorded in the mortgage office, and published their charters, the corporations so formed and subsequently doing business as corporations are hereby recognized and declared to be, now and hereafter for the term stated in their charters, valid corporations, notwithstanding that the charters may have authorized the carrying on by one corporation of several branches of business, the carrying on of which by corporations is authorized by different statutes of this state, and notwithstanding irregularities in the proceedings and instruments of the incorporation.

The second section provided that the validity of all contracts made, and acts generally, by said corporations, and the liability of shareholders therein, shall be in all respects the same as if the said corporations had been regular and valid from the beginning.

The defendants are not charter members of the Vossburg Mineral Springs Company, Limited. They acquired the stock which they hold under that company, acting ostensibly as a legally organized corporation engaged in a business not forbidden by law, with stockholders whose responsibility as such was under the provisions of section 686 of the Revised Statutes was expressly declared should not extend beyond their liability to it for the shares which they owned. It is not claimed that in the conduct of its business it has passed outside of the purposes for which it was created.

They are not in this suit resisting a demand for the forfeiture of the charter of the corporation in which they are stockholders, nor for the enforcement by proper parties, and in proper manner and form, for the enforcement to the full extent of their liability to that corporation for the shares which they own. Had this suit been of that character, issues would have been before us entirely different from those which are now submitted to us for decision.

As matters stand, defendants are defending themselves against a direct action brought against themselves personally by a plaintiff in enforcement of a contract which it had made, not with them, but with the corporation in which they are members, basing themselves entirely upon the fact that they were stockholders in that corporation, and ignoring the corporation itself.

Plaintiffs seek to extend their rights entirely beyond those which their contract gave them when entered into, and at the same time to broaden the liability of the stockholders otherwise and far beyond that which they consented to incur towards the corporation when becoming such under their contract with it.

Consequences not contemplated by any of those concerned would result if persons buying a small amount of stock in a de facto corporation should become responsible as commercial partners towards those who had dealt with it as a corporation to the full amount of claims held by them against that corporation, because of some defect in the organization of that corporation.

The plaintiffs in making their contracts were left perfectly free to select the persons with whom they should do so. They were at liberty to confine their business entirely to dealing with individuals who would engage all of their property, present or future, to secure the payment of their obligations, or they could, if they thought proper, enter into contracts with corporations or associations and depend entirely on the enforcement of their claims upon the property belonging to them and upon the personal liability of the stockholders to the corporation. If they should elect to deal with such persons, it was their duty to inform themselves of the situation before taking action. In this instance plaintiffs were fully advised that they were dealing with a limited liability company of some kind; the passbook which they furnished the company bore upon its face that it was dealing with a limited company. They took the chances of dealing with it being profitable, and when they found it was not so they could not turn upon the stockholders, with whom they had no contract. That is precisely what they are attempting to do.

Defendants claim that plaintiffs' demands against them (if they ever existed, which they deny) is barred by the provisions of Act No. 120, p. 281, of 1904. Plaintiffs urge that that statute is unconstitutional "in that it impairs the obligation of contracts." We do not see wherein that statute has had the effect of impairing the obligation of any contract. On the contrary, it has had the effect of effectuating the contract entered into between the parties at its origin, and of holding all parties to the exact legal situation in which each had placed itself at that time, and of not permitting any of the parties to depart from it. If, under the statute, each party obtains everything which it was legally entitled to claim, or to obtain through its own contracts, it is impossible to discover wherein the obligations of any contract have been impaired.

What the plaintiffs really complain of is that they have been prevented by the statute from widening their rights under their contracts, and, by urging that they had committed an error of fact as to the capacity of the person with whom they had dealt, they could profit by the error. That is a very different matter from asserting that the rights of the parties, under the contract as made, had been impaired. We find no feature of unconstitutionality in the statute. Plaintiffs have no constitutional right to complain of its provisions. We find that the conditions of Act No. 120, p. 281, of 1904, have arisen under which the organization of the Vossburg Mineral Springs Company, Limited, if defective at its creation, was, and could, and should be legalized, and, also, its contracts ratified and confirmed,

and, therefore, that plaintiffs' demands and contentions asserted herein are not well grounded, but, on the contrary, that they are neither just nor well founded. All the parties must be held to their contracts as made, and this must be enforced against the persons with whom made. There have been at no time contractual relations between the plaintiffs and the defendants. The following language of the Supreme Court of Tennessee, in Shields v. Land Co., 94 Tenn. 123, 28 S. W. 668, 26 L. R. A. 509, 45 Am. St. Rep. 700, is pertinent to this case:

"Clearly the act of 1890 (Acts Ex. Sess. 1890, p. 43, c. 17), does not impair the obligation of any contract with complainants, for they had no contract with the individual themselves. Their contract was with the corporation; hence that act, which gives life to the corporation, effectuates, rather than impairs, the life of its contract. No more does the act divest or impair any vested right of the complainants. They have no vested right in the defect in the charter of the Clifton Hill Land Company; hence the cure or removal of that defect did not divest or impair any vested rights of theirs. The right to sue the defendants personally was not a vested right in legal contemplation. It was but a consequential right resulting from the disability of the corporation, and not a right flowing from any contract with the individuals as such. The mutual intention was to bind the corporation, not the incorporators, for the price of the land, and no vested right could arise contrary to that intention. A law which facilitates the intention of the parties to a contract never impairs its obligation, or divests or impairs any vested right thereunder. As forcibly remarked by Mr. Justice Washington in an early case, 'It is not easy to perceive how a law which gives validity to a contract can be said to impair the obligation of that contract' "—citing Satterlee v. Matthewson, 2 Pet. 412, 7 L. Ed. 469.

It is therefore ordered, adjudged and decreed that the judgment appealed from be, and it is hereby affirmed.